UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:16-CR-394-T-35TGW

MIGUEL CAICEDO OBANDO

_____/

**DEFENDANT MIGUEL CAICEDO OBANDO'S SENTENCING MEMORANDUM**

COMES NOW, the undersigned counsel, on behalf of the Defendant, Miguel Caicedo Obando (Caicedo), and herein files his sentencing memorandum and pursuant to U.S.S.G. section 3B1.2, U.S.S.G. section 2D1.1(a)(5) which encompasses all remaining legal and factual objections as previously submitted in support of a minor role reduction, a section 3553 analysis, requests for mitigation, sentencing suggestions, and miscellaneous sentencing issues. More specifically, Mr. Caicedo moves the Honorable Court to grant his minor role objection, to grant the Government's "substantial assistance" motion, should such motion be filed, and based upon the factors set forth in 18 U.S.C. section 3553, impose a total sentence and/or U.S.S.G. level calculation of no greater than 60 months incarceration (U.S.S.G. level 24) or in the alternative the minimum term of incarceration, in support of said issues, states as follows:

I.  **GENERAL CASE FACTUAL BACKGROUND**

  A.  Case History:

   A Two Count Indictment was filed on September 8, 2016, charging Miguel Caicedo Obando and two co-defendants. Count One charged conspiracy with intent to distribute five kilograms or more of cocaine, while aboard a vessel

subject to the jurisdiction of the United States, in violation of Title 46, U. S. C., sections 70503(a), section 70506(a) and (b), and Title 21, U. S. C., section 960(b)(1)(B)(ii). Count Two charged possession with intent to distribute five kilograms or more of cocaine, while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, U. S. C. sections 70503(a) and 70506(a); Title 21, U. S. C. 960(b)(1)(B)(ii); and Title 18, U. S. C. section 2. On November 10, 2016, Mr. Caicedo entered a guilty plea to Count One, the conspiracy charge, pursuant to a written plea agreement. On November 28, 2016, the guilty plea was accepted by United States District Court Judge Mary S. Scriven who also adjudicated Mr. Caicedo guilty. Mr. Caicedo continues to admit his participation in the conspiracy. Mr. Caicedo in his separately prepared response to the Pre-Sentence Report (PSR) sets forth his objections and requested changes to the PSR. Mr. Caicedo hereby adopts his response to the PSR dated January 26, 2017, as if fully set forth herein. Mr. Caicedo specifically requests that the Court review his January 26, 2017, response to the PSR.

II. **SENTENCING POSITION**

   A. The Defendant submits that a sentence that is substantially less than the minimum mandatory sentence and/or U.S.S.G. level calculation that is substantially less than 120 months is reasonable but not greater than necessary to adequately punish the Defendant, avoid unwanted disparity in sentencing, promote the rule of law and protect the community from any future crimes of this Defendant.

1. The Defendant respectfully and humbly asks this Court to take note that the Defendant is a first-time and non-violent federal offender with no prior contact with the criminal justice system as a whole.

    a. The Sentencing Commission has conducted recidivism studies that demonstrate that first-time; non-violent offenders are not likely to recidivate.

    b. Upon information and belief, a deportation Order has already been or will be filed as to Mr. Caicedo. Mr. Caicedo will be sent to Colombia upon his release from custody. Therefore, it is highly unlikely that he will ever be in a position to violate United States law.

2. The Defendant respectfully and humbly asks this Court to take note that Mr. Caicedo has four minor age children that he supports financially. Mr. Caicedo lived with his extended family which tried to survive financially in reliance upon Mr. Caicedo's meager income from subsistence fishing. His participation in this matter was done to earn money so that his family could financially survive. Mr. Caicedo has always lived in dire poverty, even by Colombian economic standards. As to this defendant, his dire and precarious economic situation and that of his family, and complete lack of formal education rendered him especially susceptible to acquiesce to participate as a mule in drug smuggling. Mr. Caicedo's economic situation was dire as he was unable to support his family with his meager earnings from subsistence fishing. He very regrettably and mistakenly saw no other

reasonable option but to accept a job as a mule to transport drugs on the high seas.

Mr. Caicedo was forced into child labor at the tender age of seven (7) years old. He was not allowed to ever attend a school. He grew up illiterate. When he was just seven (7) years old, his family sent him to live and work with a local fisherman on a small fishing boat, a little larger than a dinghy. Beginning at the age of seven years old, he would go far out to sea with the local fisherman. They would stay far out to sea on three-day fishing trips. His job was to bail water from the boat, cut bait and clean fish. His pay was a few paltry pennies. When not out on the sea fishing, he was forced to work guarding the small fishing boat. He lived alone on the boat and slept alone on the boat. At night, he was given a flashlight as the means of guarding the boat. The boat was located about a 20-minute walk to where his family resided. When he was ten (10) years old he also began to work selling fish. By himself, he would walk from door to door trying to sell fish. He would receive no more than a few cents as pay for the fish that he could sell. He never had the benefit of childhood play, or childhood socialization, or going to school. He was forced to forever care for himself from the age of seven (7) years old. It is hard to imagine that such a young child who was forced into child labor at the age of seven (7) and who at seven (7) years old was given to a non-relative to work every day on a dilapidated small fishing boat could survive to become an adult. Perhaps because he was paid a few pennies for his labor, he was not considered a slave.

a. Where applicable, Sentencing Commission studies show that defendants in these categories are not likely to recidivate. Nevertheless, it

is not likely that the Sentencing Commission ever considered forced child labor of a defendant as a sentencing factor.

III.     **LEGAL ANALYSIS FOR SENTENCING MINOR ROLE**

Mr. Caicedo should receive a two-level reduction for minor role. Mr. Caicedo's role in this case was simply as a courier of the cocaine. He was not a leader or organizer, he had no authority in this matter, and had no proprietary interest in the operation – he was paid only to help to transport the cocaine.

The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. §3B1.2 is <u>United States v. Rodriguez De Varon</u>, 175 F.3d 930 (11th Cir. 1999). In the <u>De Varon</u> case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. <u>De Varon</u>, 175 F.3d at 934. As the Eleventh Circuit noted, "[f]irst, and foremost, the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. §1B1.3." Id. The Eleventh Circuit further stated the second part of the test requires that "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." Id.

The guideline involved in the issue of minor role is U.S.S.G. §3B1.2; the Most recent amendment to it is a more inclusive guideline provision for individuals like Mr. Caicedo. The pertinent changes appear not in the text of §3B1.2 itself, but rather in the commentary of Application Note 3(C), which instructs sentencing courts to apply a fact-based determination in deciding whether the mitigating

5

adjustment should be -4 levels (a "minimal" role), -2 levels (a "minor" role), or -3 levels (roles falling between minor and minimal). Specifically, the Commission has added text setting forth a non-exclusive list of factors to examine, including: the defendant's understanding of the scope and structure of the crime; the degree of the defendant's participation in planning or organizing the crime; the extent to which the defendant exercised or influenced decision-making authority; the nature and extent of the defendant's participation in the offense itself; and the degree to which the defendant stood to benefit from the unlawful activity. Significantly, Application Note 3(C) advises sentencing courts that merely because "a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in this criminal activity." This language was added in specific response to cases that concluded a defendant's indispensable role was incompatible with a mitigating role adjustment. Recently, on September 20, 2016, the Eleventh Circuit considered a case involving the U.S.S.G. section 3B1.2 Amendment 794. The Court of Appeals reversed and remanded for re-sentencing a case involving a denial of minor role for the captain of a "go-fast" vessel that was transporting cocaine in international waters. In <u>United States v. Carlington Cruickshank</u>, (11th Cir. No. 14-13754, September 20, 2016) the 11th Circuit determined that the sentencing court in deciding a minor role "should perform an inquiry based on the totality of circumstances, taking into account the variety of factors laid out in DeVaron and Amendment 794." Id. at 22-23. The purpose of the minor role adjustment is to ensure that a low-level

6

participant in a conspiracy does not receive the same sentence as a higher-level participant in a conspiracy, including an average participant. Even though, all the defendants in a conspiracy are potentially held accountable for the total quantity of drugs involved, lesser involved defendants should not be receiving the same sentence as those who are more involved in the entire scheme. The only way to fairly apply a role assessment is to compare the defendant to all those charged and uncharged who were involved in the conspiracy. Since, Mr. Caicedo is being held for an amount of cocaine that places him at the same offense level as the owners, and those charged with logistics, his role must be compared to all the other discernable or obvious participants in the conspiracy.

In the present case, the factors weigh in favor of Mr. Caicedo's minor role status. Factually, Mr. Caicedo was paid by others in the conspiracy. Mr. Caicedo had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. Other factors supporting Mr. Caicedo's minor role status include the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy, he reported to the next larger player in the conspiracy. Distinctly, no one reported to him. Mr. Caicedo had no decision making authority. Clearly under these facts, Mr. Caicedo was less culpable than most of the participants. Specifically, he was less culpable than the vessel's master, the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine or any other unindicted co-conspirators. He was essentially a mule on a small boat.

Based on the forgoing argument and legal authority, Mr. Caicedo's objections should be granted and he should receive a two-level reduction for

minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that (absent the mandatory ten-year sentence) he does not receive the same sentence as individuals that are more culpable than him, thus running astray of the guiding goal that similarly-situated defendants should be punished similarly.

## IV. REQUEST FOR A REASONABLE SENTENCE

Mr. Caicedo respectfully requests that this Court impose a sentence below the advisory guideline range, as "sufficient but not greater than necessary" to accomplish the purposes of sentencing. The Sentencing Guidelines are now, of course, advisory. United States v. Booker, 543 U.S. 220 (2005). Thus, although the recommended guideline range must be taken into account, this Court must follow the "parsimony provision" of 18 U.S.C. § 3553(a), which is the "overarching" command of the statute. Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). That provision provides that this Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of § 3553(a)." Those purposes set forth in paragraph 2, are: "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

## V.     PRE-SENTENCE INVESTIGATION REPORT LEGAL OBJECTIONS

A. Mr. Caicedo has provided his requested changes and objections to the Pre-Sentence Investigation Report (PSR) to the U. S. Probation Officer. As stated above, Mr. Caicedo hereby adopts his response to the PSR as if fully set forth herein. Mr. Caicedo for the reasons set forth in his response to the PSR and as set forth in this Sentencing Memorandum should receive a sentence and/or a USSG level calculation that is substantially less than the minimum mandatory sentence of 120 months.

## VI. 18 U.S.C. SECTION 3553 ANALYSIS

A. The Defendant respectfully requests a sentence of substantially less than the minimum mandatory sentence and/or a USSG level calculation that is substantially less than is suggested in the PSR. In partial support, the Defendant points to the Sentencing Reform Act of 1984. It created the Federal Sentencing Guidelines. The purposes of Act were set forth in 18 U.S.C. Section 3553(a). It is in this section that federal district courts are directed to:

> **"impose a sentence sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed (A) to reflect the seriousness of the offense; (b) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."**

B. Further, Section 3553(a) directs federal district courts to consider the following set of factors when fashioning a defendant's sentence:

  1. The nature and circumstances of the offense and the history and characteristics of the defendant; and

  2. The kinds of sentences available; and

3. The need to avoid disparities among defendants with similar records who have been found guilty of similar conduct; and

4. The need to provide restitution to any victims of the offense.

C. United States Supreme Court Justice Breyer gave renewed importance to these 18 U.S.C. 3553(a) factors by eliminating the mandatory nature of the guidelines in his majority opinion in *Booker*.

1. Specifically, on page 17, Justice Breyer stated:

**"Despite the absence of Section 3553(b)(1), the Act continues to provide for appeals from sentencing decisions (irrespective of whether the trial judge sentences within or outside the Guidelines range in the exercise of his discretionary power under Section 3553(a) . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."**

D. Now that the guidelines are advisory, the Court is free to utilize 18 U.S.C. Section 3553(a)(1), (3)-(7) in fashioning a reasonable sentence for the Defendant. The sections of particular relevant importance in this matter are:

1. *The need to avoid unwarranted sentencing disparity among defendants with similar records and similar crimes.*

    A. In United States v. Fernandez, 443 F.3d 19 (2nd Cir. 2006), the court held that considering a defendant's history and characteristics, the court should also consider the contention that the defendant made efforts to cooperate, even is those efforts did not yield a government motion for departure. Also, United States v. Doe, 213 F.App'x 660 (10th Cir. 1997), where the case was remanded because the sentence would be unreasonable if the court failed to take into consideration defendant's efforts to cooperate.

See also, United States v. Japer, 362 F.Supp.2d 365 (D. Mass 2005), a drug case in which a downward departure was granted, in part, because the defendant tried to cooperate repeatedly but had little to offer. The court stated, "There is something troubling about the extent to which differences in sentencing were driven not by the differences in crime, but by the happenstance of the way the government indicted, the jurisdiction of the indictment, and who ran to cooperate first."

2. *The nature and circumstances of the offense and the history and characteristics of the defendant.*

   A. Mr. Caicedo entered a guilty plea as to Count One of the Indictment pursuant to a written plea agreement. The plea agreement contained a waiver of appeal rights as to Mr. Caicedo. It is very likely that at the time of sentencing, that Mr. Caicedo will not receive any benefit from the government in consideration of his appeal waiver. Mr. Caicedo requests that the Court consider his appeal waiver and that the Court lower his USSG level calculation and/or determine a lower sentence based upon his appeal waiver. Mr. Caicedo was helping as a mule with a large drug shipment but he had no idea where the shipment was eventually headed and nothing shows that it was going to the U.S. His personal and family circumstances are extraordinary and well outside the heartland of cases which the USSG and Section 3553 contemplate. His innocent family has and will suffer irreversible serious harm if

he is sentenced to a lengthy prison sentence as calculated in the PSR.

Furthermore, the defendant´s role in the venture was minimal to minor when viewed in comparison to the many others who obviously took part. He was only one small component of the scheme, a mule. From growers, processors in laboratories, owners of the drugs, buyers of the drug shipment, levels of organizers, leaders, movers through the distribution network, literally dozens of people were involved. He should be compared to those people in calculating a reasonable USSG sentence which is well below the PSR´s suggested USSG calculated sentence. And compared to other similarly situated defendants who are serving greatly less severe sentences than is calculated in the PSR.

Mr. Caicedo also moves the Court to depart downward in his USSG levels and /or determine a lesser sentence outside of the Guideline calculation due to the conditions of his pre-sentence confinement. During his confinement, he has been kept in various county jails with inadequate facilities which are substantially inferior to federal detention facility standards.

Additionally, since Mr. Caicedo is not a United States citizen he will not be permitted to participate in certain prison programs which may offer reductions in his term of imprisonment. This discriminatory approach to prisoners' length of imprisonment results in disparate imprisonment time for Mr. Caicedo.

He likely will not even qualify for the UNICORE work program. Apparently, to qualify for the UNICORE program an inmate must have at least a $1,000.00 indebtedness. Mr. Caicedo is so poor that he doesn't owe anywhere near $1,000.00. Thus, his ability to work in prison to send money to his impoverished family is likely nil. He will very likely serve more time in prison and more severely suffer from separation from loved ones than someone who is a United States citizen who committed a similar offense. The poverty of his loved ones will not permit them to visit him during his many years in prison.

Additionally, the Department of Justice has recently acknowledged that the many private contract prisons where many federal prisoners are housed are substantially inferior to federal prisons. The contract prisons are recognized by the government as not offering adequate rehabilitation, having inadequate living conditions, and not providing sufficient programs to federal inmates. The Justice Department over a several years' period of time intends to slowly not renew the contracts for the private contract facilities. Unfortunately, the clear majority of "boat case" defendants continue to be designated to the substantially inferior private contract prisons. The terms of imprisonment for "boat case" prisoners in the private contract prisons is much harsher than the U. S. citizens who are sent to federal prisons. The result is a discriminatory practice by the Bureau of Prisons which seriously

causes the "boat case" defendants to serve much harsher sentences due to intentionally placing them in private contract prisons. For the above reasons Mr. Caicedo should be sentenced to substantially less time in prison than is suggested in the PSR.

## VII. SUGGESTED SENTENCING OPTIONS

A. The Defendant respectfully requests that this Honorable Court grant a variance to the Defendant's USSG calculated total offense level for the reasons stated above and as stated in his response to the PSR and sentence the Defendant as follows: substantially less than the minimum mandatory sentence of 120 months and/or calculate his USSG level at substantially less than is suggested in the PSR, and no fine.

1. The Defendant respectfully suggests that a sentence and /or USSG level calculation that is substantially less than 120 months, is the most appropriate punishment given the totality of circumstances as this type of sentence is reasonable but not greater than necessary to appropriately punish the Defendant and, at the same time, adequately protect the community from the virtually non-existent chance of future crimes of this Defendant given his age, his lack of criminal history, and his entering into a plea agreement with the government, including an appeal waiver. The Government has yet to indicate if it will request that the Court not apply a minimum mandatory sentence.

    a. Further, this type of sentence will allow the Defendant to be more quickly deported to Colombia. He will not be a burden upon the federal prison system. Although, he will live in dire poverty in

Colombia he can attempt to find work to try and support himself and his minor children. If sentenced to the severe sentence as suggested in the PSR his minor children will continue to have very little means of economic survival.

2. The Defendant respectfully suggests that a sentence and/or a USSG level calculation which is substantially below the minimum mandatory sentence avoids unwarranted disparities between similarly situated defendants. Furthermore, when Mr. Caicedo's level of participation is compared to other defendants who were principals in international cocaine smuggling, such as, Diego Baez Baez, 8:10-CR-402-T-35TBM, or Ivan Gonzalez Bejarano, 8:06-CR-297-T-23MAP, it is very evident that Mr. Caicedo's sentence and/or USSG level calculation merits a substantial reduction that is several years less than the minimum mandatory.

3. The Defendant submits that this Court can accomplish a sentence and/or USSG level calculation that is several years less than the minimum mandatory by utilizing three distinct and separate ways:

   a. Based upon a Title 18 Section 3553 analysis; and/or

   b. Based upon mitigating factors and downward adjustments; and/or

   c. Based upon its own judgment that a guideline sentence is an unreasonable sentence.

      1.) As the Supreme Court said in *Spears*:

      **"Even when a particular defendant . . . presents no special mitigating circumstances – no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a**

> **sentencing court may nonetheless vary downward from the advisory guideline range . . . The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines."**

## VIII. REQUESTS FOR RECOMMENDATIONS AND MISCELLANEOUS ISSUES

A. Defendant respectfully request a federal institution where he can work to send money to his impoverished family, preferably an institution where he can participate in the UNICORE program. He specifically requests that the Court recommend that he be designated to Ft. Dix, New Jersey. He also requests that he receive training and work in carpentry, culinary, and electricity. Further, the Defendant respectfully requests that this Court place in writing said recommendation of a federal correctional institution.

1. The Bureau of Prisons welcomes judicial recommendations (see *BOP Program Statement 5100.07*) and by statute it is required to consider them. 18 U.S.C. Section 3621(a)(4)(B). Specifically, a prison within Florida would be preferable because:

   a. Federal prisons and not contract facilities are the most beneficial for inmate rehabilitation.

      1.) Bureau statistics show that it honors judicial recommendations in the overwhelming majority of cases in which a defendant qualifies for a particular recommended institution if there are reasons on the record to support such a designation.

## CONCLUSION

WHEREFORE, the Defendant, Miguel Caicedo Obando, by and through undersigned counsel respectfully requests this Court sentence the Defendant to a term of imprisonment that is several years less than the minimum mandatory sentence or in the alternative to the minimum term of incarceration. In the event that the Court determines that it is by statute restrained from sentencing Mr. Caicedo to a term of imprisonment below the minimum mandatory sentence, then Mr. Caicedo requests that the Court determine his USSG level calculation at a level which is substantially less than the USSG level which is suggested in the PSR's total level calculation.

Respectfully submitted,

By: /s/ Ronald Marzullo
Ronald Marzullo, Esquire
Florida Bar No.: 613177
P. O. Box 1205
Valrico, Fl. 33595
Tel: (813) 662 3080
Email: marzullorj2@hotmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on January 27, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all attorneys of record.

/s/ Ronald Marzullo

Ronald Marzullo