UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                        CASE NO. 8:16-cr-394-T-35TGW

ANICETO ROSERO HURTADO, ET AL

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, by and through the undersigned Assistant United States Attorney, submits this memorandum regarding reasonable sentences.[1] Miguel Caicedo Obando filed a sentencing memorandum on January 27, 2017, Dkt. No. 60, in which he rendered factual and legal objections to the Pre-Sentence Report (PSR). Inmar Valencia Camacho filed a sentencing memorandum on January 30, 2017, Dkt. No. 60, in which he also rendered factual and legal objections to the PSR. Aniceto Rosero Hurtado filed a sentencing memorandum on January 31, 2017, Dkt. No. 64, in which he too rendered factual and legal objections to the PSR. Of import to the Court's calculation of the total guideline range is the application of a minor role reduction. The United States' objections to the application of a minor role reduction. Separately, on February 2, 2017, the United States

---

[1] This sentencing memorandum is submitted with regards to all three defendants.

filed a Motion for Downward Departure of Defendant's Sentence Based Upon Substantial Assistance as to defendant Valencia Camacho, Doc. 69, and as to defendant Caicedo Obando, Doc. 70.

The sentencing guideline range for Caicedo Obando and Valencia Camacho is 120-135 months. The sentencing guideline range for Rosero Hurtado is 135-168 months. Per the terms and conditions of the agreement between the U.S. Attorney's Office for the Middle District of Florida and the defendants, the United States has no objection to the low end of the applicable guideline ranges.

## I. BACKGROUND

### A. Factual Background

Per the factual basis in the plea agreements, Dkts. No. 28, 33, and 39, the following facts are not in dispute.

On or about August 19, 2016, the defendants were knowing and willing participants in a marine smuggling venture in international waters of the Eastern Pacific Ocean involving approximately 300 kilograms of cocaine. *Id*. at 18.

On August 19, 2016, a marine patrol aircraft detected the panga "MERLUZA" 115 NM SW of Azuero Peninsula Panama in international waters of the Pacific Ocean. *Id.* at 19. The USCG Cutter "MOHAWK"

launched an over-the-horizon (OTH) boat. *Id.* The panga was dead in the water and bore the vessel name "MERLUZA. CP.01" painted on each side. *Id.* The master claimed Colombian nationality for the vessel. *Id.* Colombia was notified and could neither confirm or deny nationality so the MERLUZA was treated as a vessel without nationality and therefore subject to the jurisdiction of the United States. *Id.* at 19.

Upon boarding, fresh fiberglass work was found and a borescope was used which ultimately detected 66 packages of cocaine from the port side and 206 packages from the starboard side. *Id.* The vessel sank soon thereafter. *Id.*

The crew of the panga, Aniceto Rosero Hurtado, Miguel Angel Taicedo Obando and lnmar Valencia Camacho, were taken into custody and first entered the United States at point within the Middle District of Florida on/around September 8, 2016. *Id.*

The defendants were detained and first arrived in the United States at a point in the Middle District of Florida. *Id*. at 19.

As calculated by a final laboratory report, the total amount of cocaine seized during this interdiction was 261.7 kilograms. Dkt. No. 65 at 14; Dkt. No. 67, at ¶ 15.

B.   **Procedural Background**

On September 8, 2016, the grand jury indicted defendants Aniceto

Rosero Hurtado, Miguel Angel Taicedo Obando and lnmar Valencia Camacho, on the following two charges: (1) conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count One"); and (2) possession with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a); 18 U.S.C. § 2; and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count Two"). Dkt. No. 1.

Rosero Hurtado pleaded guilty to Count One of the Indictment on November 1, 2016, before Magistrate Judge Wilson. Valencia Camacho pleaded guilty to Count One of the Indictment on November 3, 2016, before Judge Wilson. Caicedo Obando pleaded guilty to Count One of the Indictment on November 10, 2016, before Magistrate Judge Wilson.

## II.  DEFENDANTS DO NOT QUALIFY FOR THE MINOR ROLE REDUCTION

### A. Legal Framework

The proponent of a downward adjustment bears the burden of establishing that he merits the adjustment by a preponderance of the evidence.

*United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999). As set forth below, the legal framework concerning mitigating role is found in (1) the U.S. Sentencing Guidelines; (2) *United States v. De Varon* and its progeny; and (3) case law applying the mitigating role analysis in maritime interdiction cases similar to the instant case.

### 1. U.S. Sentencing Guidelines

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. U.S.S.G. § 3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A). In particular, the two-level "minor role" reduction applies to a defendant "who is less culpable than most other participants in the criminal activity." *Id.* § 3B1.2 cmt. n.5. The commentary to U.S.S.G. § 3B1.2 explains that determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* § 3B1.2 cmt. n.3(C). The commentary provides the following non-exhaustive list of factors for consideration:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;
(ii) the degree to which the defendant participated in planning or organizing the criminal activity;
(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

### 2. *De Varon* Framework

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also compare the defendant's conduct to that of other participants in the criminal scheme attributed to the defendant. *Id.* at 934, 944.

Concerning the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct *attributed to her*." *Id.*

at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *Id.* at 944. Instead, "the district court must determine that the defendant was less culpable than *most other participants* in her relevant conduct." *Id.* (emphasis in original). In *De Varon*, the Eleventh Circuit described a helpful example in which three individuals enter a bank intending to rob it. *Id.* (citing *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir. 1989)). In the example, one defendant stands guard at the bank entrance, another sprays paint on the security camera, and the third gathers money from the teller's cage. *Id.* The court explained that even if one of the participants deserved an aggravating role enhancement, the other participants would not

7

be entitled to a mitigating role reduction. *Id.*; *see also id.* (citing *United States v. Rotolo*, 950 F.2d 70, 71 (1st Cir. 1991)) (recognizing that "one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities").

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

### 3. Application in Maritime Interdiction Cases

The Eleventh Circuit has recently applied the *De Varon* analysis to a maritime interdiction conspiracy case nearly identical to the instant case, and upheld the district court's decision denying a mitigating role reduction for a crewmember. In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016), the defendant faced the same two charges on which the grand jury here indicted these three defendants. The district court in the *Herrera-Villarreal* case sentenced the defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a

crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other crewmembers on the vessel. *Id.*

    **B.**    **Analysis**

Each defendant fails to satisfy his burden to demonstrate that he is entitled to a minor role reduction on either of the two prongs of the *De Varon* analysis.

    1.    First Prong of *De Varon* Analysis

The first prong in the *De Varon* analysis involves evaluating each defendant's role in the conduct for which he is being held accountable. *De Varon*, 175 F.3d at 934, 940. The object of the conspiracy, and to which each defendant pleaded guilty, and for which the PSR holds him accountable, was to transport approximately 261.7 kilograms of cocaine across international waters from one point to another.

Several of the *De Varon* and U.S.S.G. § 3B1.2 factors weigh against

finding that each defendant had a minor role in this conspiracy. They helped transport 261.7 kilograms of cocaine, which conservatively places the value of this amount of cocaine at an estimated $9,135,00.00 (nine million, one hundred thirty-five thousand dollars). The amount of drugs and their worth show that whoever organized the trip placed a high level of trust in the defendants. The Eleventh Circuit has recognized that "the amount of drugs in a courier's possession—whether very large or very small—may be the best indication of the magnitude of the courier's participation in the criminal enterprise."[2] *Id.* at. 943. The Eleventh Circuit has routinely upheld denial of the minor role reduction where the amount of drugs was far less than 261.7 kilograms. *See, e.g.*, *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015) (denying minor role reduction where defendant transported three kilograms of methamphetamine). *See, also*, *De Varon*, 175 F.3d at 946 (denying minor role reduction where defendant transported 512.4 grams of heroin).

Additionally, during post-*Miranda* statements, each defendant told investigators that he knew he was transporting drugs. These statements demonstrate that each defendant was fully aware of the scope of the conspiracy for which he is being held accountable, knew the penalties

---

[2] The Eleventh Circuit recently reaffirmed that the amount of drugs the courier possessed is a significant consideration in the minor role analysis, but explained that it cannot be the *only* factor the court considers. *See United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016).

associated with such a trip, and undertook the ultimately interdicted trip anyway. Finally, as a mariner on a go-fast vessel smuggling 261.7 kilograms of cocaine, the defendants were centrally involved in the core purpose of the conspiracy. They personally participated in attempting to distribute approximately 261.7 kilograms of cocaine.

Furthermore, because each defendant's actual conduct was coextensive with his relevant conduct, he cannot have had a minor role compared to his relevant conduct. Although the defendants' conspiracy may be part of a larger criminal enterprise, they are not being held accountable for the actions of any such larger enterprise. Thus, each defendant cannot use some larger criminal enterprise for purposes of defining his individual role. *De Varon*, 175 F.3d at 941, 947 (explaining that the court should evaluate the defendant's role based on the conspiracy for which he is held accountable, and rejecting the contention that the court should evaluate the defendant's role based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor"). The criminal conspiracy of which the defendants were convicted consisted of three men transporting approximately 261.7 kilograms of cocaine across international waters. Each was intimately involved in the central object of the conspiracy of which he is being held

11

accountable.

Finally, as in the *Herrera-Villareal* case, the defendants' offense level is calculated using only the amount of drugs on the vessel, and with regards to Rosero Hurtado, his role as the master. Doc. 62 at ¶¶ 18-30; Doc. 65 at ¶¶ 19-31; Doc. 67 at ¶¶ 20-31. Thus, each defendant's "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 2016 WL 6123493, at *2. Accordingly, because each defendant did not have a minor role compared to his relevant conduct, he cannot carry his burden of the first prong of the *De Varon* analysis.

### 2. Second Prong of the *De Varon* Analysis

Even if each defendant could satisfy his burden of the first prong of the *De Varon* analysis, he fails to do so on the second prong. The second prong of the *De Varon* analysis involves comparing each defendant's role in the conspiracy to that of other participants in the criminal scheme attributed to him. *De Varon*, 175 F.3d at 934, 944. As discussed above, the conspiracy for which each defendant is being held accountable consisted of three men in a boat transporting approximately 261.7 kilograms of cocaine across international waters. In addition to the three men on the boat, during each defendant's post-*Miranda* interview, they alluded to at least one other person involved in this conspiracy, an organizer who was only identified by first

name or a physical description. The defendants may argue that this organizer or others are more culpable than him. However, just because people in an organizational role may merit an offense level enhancement for his or her role does not mean that the defendants merit a mitigating role reduction. *See De Varon*, 175 F.3d at 944. Additionally, the mere fact that someone else hired the defendants to smuggle the drugs, without more information about this person's role, "does not compel the conclusion that [the organizer] was sufficiently more culpable" than the defendants. *Id.* at. 946; *see also id.* at 944 (citing *Rotolo*, 950 F.2d at 71) (recognizing that a defendant is not entitled to a mitigating role reduction merely because someone else in the criminal enterprise supervised his activities).

The crux of the analysis is whether each defendant is "substantially less culpable than the average participant" in the conspiracy. U.S.S.G. § 3B1.2 cmt. n.3(A). Stated differently, the issue is whether he is "less culpable than *most other participants*" in the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); U.S.S.G. § 3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which the defendants are being held accountable was a mariner in the boat transporting the drugs. Because each defendant was himself a mariner, he is not "substantially less culpable than the average participant."

### III. CONCLUSION

For the reasons set forth above, the Court should deny the minor role reduction as to each defendant.

>
> Respectfully submitted,
>
> A. LEE BENTLEY, III
> United States Attorney
>
> By: */s/ Rebecca L. Castaneda*
> REBECCA L. CASTANEDA
> Assistant United States Attorney
> United States Attorney No. 179
> 400 N. Tampa Street, Suite 3200
> Tampa, Florida 33602-4798
> Telephone: (813) 274-6000
> Facsimile: (813) 274-6358
> E-mail: Rebecca.Castaneda@usdoj.gov

U.S. v. Aniceto Rosero Hurtado, et al    Case No. 8:16-cr-394-T-35TGW

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Counsel of Record

                             */s/ Rebecca L. Castaneda*
                             REBECCA L. CASTANEDA
                             Assistant United States Attorney
                             United States Attorney No. 179
                             400 N. Tampa Street, Suite 3200
                             Tampa, Florida 33602-4798
                             Telephone:  (813) 274-6000
                             Facsimile:   (813) 274-6358
                             E-mail: Rebecca.Castaneda@usdoj.gov